### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| NIKKE FERGUSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-4114 |
| | § | |
| HILTON HOTELS CORPORATION, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM, ORDER AND FINAL JUDGMENT

Pending before the court is defendant Hilton Hotels Corporation motion for summary judgment.  Dkt. 18.  Upon consideration of the motion, the record, and applicable law, the court finds that the motion should be GRANTED.

### I. BACKGROUND

Plaintiff Nikke Ferguson asserts claims against defendant Hilton Hotels Corporation ("Hilton") for race and sex discrimination, defamation, intentional infliction of emotional distress, and retaliation.  Ferguson, an African-American female, applied for a job as an Income Auditor with Hilton in September 2008.  Dkts. 1, 18.  Hilton interviewed Ferguson and an Asian female, Vicki Chan, for the position.  Dkt. 1.  Ferguson alleges that she was told during the interview that she would probably get the job.  *Id.*  However, Hilton hired Chan.  *Id.*  Hilton claims that, while both women were qualified for the position and interviewed well, Chan was a better overall fit for the position.  Dkt. 18.  Chan has a college degree, and Ferguson does not.  Chan's degree is from Conrad N. Hilton College at the University of Houston, which maintains a long-standing relationship with defendant.  *Id.*  Chan's degree made her eligible for promotion opportunities for which a degree is required.  *Id.*  Chan also had a strong knowledge base for understanding complex computerized

financial systems, which is required for an Income Auditor position.  *Id.*  Ferguson claims that she was better qualified than Chan because she, unlike Chan, had previous auditing experience.  Dkt. 1.  Auditing experience, however, was not a published requirement for the job.  Dkt. 18

Hilton later contacted Ferguson to inquire about whether she would be interested in an opening for a General Cashier position.  *Id.*  Ferguson replied in the affirmative, interviewed for the position, and was hired.  *Id.*  She participated in orientation and underwent on-the-job training with the previous General Cashier.  *Id.*  As the General Cashier, Ferguson was responsible for Hilton's money.  *Id.*  She inventoried daily deposits from the regular cashiers, reported discrepancies, made change for cashiers as needed throughout the day, and issued new cashier's their "house bank."  *Id.*  In addition to the regular hotel funds, Ferguson was responsible for handling $21,000.00 in cash that Hilton received each week from Emirates airline.  *Id.*  Ferguson would divide the money into separate bundles each week to be distributed to the airline crewmembers.  *Id.*

Soon after Ferguson began working for Hilton, she encountered a shortage of $100 from the envelope of one of the individuals who worked at the front desk.  *Id.*  Hilton investigated the shortage, but the investigation was inconclusive.  *Id.*  However, when the tapes from Ferguson's office were reviewed during the course of this investigation, Hilton discovered that the shelves in Ferguson's office were obstructing the view of the safe.  *Id.*  Hilton thereafter moved the shelves to another location in the room.  *Id.*  Additionally, Hilton asked Ferguson to stop bringing her purse into the office, and provided her with a large safety deposit box in which she could store her purse during the day.  *Id.*  Ferguson characterizes this change as being "harassed" by security.  Dkt. 1.  Ferguson believes that she was being harassed because she is "black" and was being blamed for the missing funds because of her race.  *Id.*

2

In December 2008, the person who requested money from Emirates each week, Laura Alvarez, planned to be on vacation for ten days.  Dkt. 18, Exh. C.  Alvarez advised Ferguson that she would be requesting two weeks worth of money so that Ferguson would have enough money to distribute to the airline employees while Alvarez was away.  *Id.*  When Alvarez returned, she made two requests for Emirates money, leaving Ferguson two weeks ahead.  Dkt. 18.  Each week thereafter, she continued to request Emirates money as usual.  *Id.*  At the end of January, Alvarez informed Ferguson that she would not order Emirates cash for one week so that they could get back on track.  *Id.*

Ferguson worked on Sunday, February 1, 2009.  Dkt. 18.  On February 2, 2009, her supervisor claims that he received an envelope containing Ferguson's keys and a resignation letter in which Ferguson states that $21,000 of Emirates money was missing.  *Id.*  During her deposition, Ferguson testified that she typed *some* of this letter, but, rather than putting it in an envelope for her supervisor, she threw it in the trash.  Dkt. 18, Exh. B.  Ferguson testified that she told her supervisor in person that the money was missing and that he asked for her keys and told her to leave, which she understood as meaning she was fired.  *Id.* at 218, 266-67.

Regardless of whether Ferguson was fired or she resigned, she admits that she typed the parts of the letter stating that she was "short the money"; "took the coward's way out"; knew her employer would be "upset" with her; thought she must have given the missing money to Dunbar (the armored cash transport service used by Hilton); believed she "would never hear the end of it"; felt like she was "not responsible enough to handle this job"; and knew she "would have to repay the money to [the] hotel."  Dkt. 18, Exh. B at 221-24.  Additionally, she agrees that she wrote the portions of the letter stating that she was "truly sorry for doing this to you guys," that Hilton could "dispose of

3

anything that [she had] left behind," and that she "had [her] chance and now [she] would have to go back to [her] parents and ask them to bail [her] out again."  Dkt. 18, Exh. B at 221-24.

Hilton attempted to find the missing $21,000.00 to no avail.  Dkt. 18 & Exh. A.  As per Hilton's protocol, the Director of Security and Life Safety contacted the Houston Police Department to report the missing money.  Dkt. 18.  Hilton contacted Ferguson "several times" to attempt to resolve the issue.  *Id.*  According to the Hilton employees who were in contact with Ferguson about the missing money, she initially advised that she was working with her family to get the cash to pay Hilton back, but she eventually stopped returning their calls.  *Id.*  After an investigation by the Houston Police Department, the Harris County District Attorney's Office determined that there was probable cause to arrest Ferguson for theft, and Ferguson was eventually indicted by a Grand Jury. *Id.*, Exh. A.

## II. Legal Standard

Ferguson's response to Hilton's motion for summary judgment was due on January 27, 2011, and she has yet to file a response.  Under the Local Rules of the Southern District of Texas, "[f]ailure to respond will be taken as a representation of no opposition."  S.D. Tex. Loc. R. 7.4.  The court therefore deems the motion unopposed.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-

4

moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). A motion for summary judgment cannot be granted simply because it is unopposed. *Sangi v. Fairbanks Capital Corp.*, 259 F. App'x 359, 361–62 (5th Cir. 2007); *Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360, 362 n.3 (5th Cir. 1995). However, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D.Tex.1996) (citing *Solo Serve Corp. v. Westowne Assocs.,* 929 F.2d 160, 165 (5th Cir.1991)).

### III. ANALYSIS

#### A.    Discrimination

Ferguson claims that Hilton discriminated against her as an African-American female because it hired Chan for the Income Auditor position, that she did not receive proper training because of her status as an African-American female, and that Hilton terminated her employment and reported the incident to the Houston Police Department because of her status as an African-American female. Dkt. 1. Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to discriminate against an employee because of her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993)). When a plaintiff offers only circumstantial evidence, the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination. *See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973)). To establish a *prima facie* case, the plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated" or the plaintiff was replaced by a non-minority. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford*, 197 F.3d at 184); *Jatoi v. Hurst-Eules-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987)).

If the plaintiff successfully establishes a *prima facie* case of discrimination, the employer must then produce a legitimate nondiscriminatory reason for its adverse employment decision. *Id.* Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates and the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that the nondiscriminatory reason is merely pretextual in order to survive summary judgment. *Id.* To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). A plaintiff may establish pretext by showing either (1) the reason offered by the employer is untrue, or (2) the reason is true, but the plaintiff's protected characteristic was a motivating factor in the adverse decision (the "mixed-motives" alternative). *Id.*; *Keelan v. Majestco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against her because of her protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001).

With regard to Ferguson's claim that Hilton discriminated against her by hiring Chan for the auditor position, Hilton does not point to an absence of material fact as to any of the elements of Ferguson's *prima facie* burden. Instead, Hilton claims that it had a legitimate nondiscriminatory reason for hiring Chan instead of Ferguson, and that Ferguson cannot prevail on this claim because she was not clearly better qualified than Chan. Evidence of superior qualification may be probative of pretext. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001). But, "the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate

selected over the plaintiff for the job in question.'" *Id.* (quoting *Deines v. Tex. Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).

Here, Hilton's reasons for hiring Chan—that she has a degree, better promotion potential, and graduated from a school with which Hilton had a strong relationship, were legitimate nondiscriminatory reasons for choosing to hire her over Ferguson. Ferguson does not present any evidence that she was better qualified than Chan or, for that matter, that the decision to hire Chan was made with a mixed motive or that the reason given for hiring Chan is pretextual. *See Rachid*, 376 F.3d at 312. Thus, Hilton has met its burden of production, and Ferguson has not met her burden of persuasion.

With regard to Ferguson's claims that she was discriminated against because she did not receive proper training and that Hilton terminated her employment and reported the incident to the Houston Police Department because of her status as an African-American female, Hilton argues that there is no evidence that Ferguson suffered an adverse employment action. The Fifth Circuit has held that only "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, satisfy the "adverse employment action" element of a *prima facie* case of discrimination. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001). The allegation that Hilton did not properly train Ferguson is not an "ultimate employment decision" and therefore not an "adverse employment action."

The termination of Ferguson's employment, if indeed Hilton terminated her employment, is an "ultimate employment decision." However, Hilton presents an affidavit from Ferguson's supervisor indicating that Ferguson was not fired; rather, she resigned. Dkt. 18, Exh. D. Ferguson did not file a response, so she has not raised an issue of material fact with regard to her *prima facie* burden for this claim. However, Ferguson's deposition testimony, which was provided by Hilton,

8

indicates that she believes she was fired.  If the court were to construe this as raising an issue of material fact, Ferguson's claim that she was fired because of race or sex still fails because Hilton had a legitimate, nondiscriminatory reason for terminating Ferguson's employment: $21,000.00 for which Ferguson was responsible was missing.  This is also a legitimate nondiscriminatory reason for reporting the loss to the police and cooperating with the police and district attorney, and it has nothing to do with Ferguson's race or gender.[1]

Because Ferguson either did not present a *prima facie* case of discrimination or Hilton had a legitimate nondiscriminatory reason for the actions it took that Ferguson has not shown to be pretextual or motivated by her race or gender, Ferguson's claims for sexual and racial discrimination are DISMISSED WITH PREJUDICE.

**B.    Harassment**

Ferguson also appears to claim that she was harassed while she was working as a General Cashier because or her race or gender.  Dkt. 1.  The United States Supreme Court noted in *Harris v. Forklift Systems, Inc.* that "when discriminatory conduct [is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin," the broad notions of Title VII are offended.  510 U.S. 17, 22, 114 S. Ct. 367 (1993).  An employee establishes a *prima facie* case of hostile work environment by showing that (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual or racial harassment; (3) the harassment was based on sex or race; and (4) the harassment affected a term, condition, or privilege of her employment.  *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007).  "For harassment to affect a 'term, condition, or privilege of employment' it must be

---

[1]  Hilton provided evidence demonstrating that it is its standard practice to alert police and fill out a loss report when any loss occurs.  Dkt. 18, Exh. A.

'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" *Celestine v. Petroleos de Venez, SA*, 266 F.3d 343, 353 (5th Cir. 2001) (quoting *Watts v. Kroger Co.*, 170 F.3d 505, 509-10 (5th Cir. 1999)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23. The "environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Faragher v. Boca Raton*, 524 U.S. 775, 786, 118 S. Ct. 2275 (1998). "An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute hostile work environment." *Lauderdale*, 512 F.3d at 163. However, "[i]ncidental, occasional or merely playful sexual utterances will rarely poison the employee's working conditions to the extent demanded for liability. Discourtesy or rudeness, 'offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment.'" *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (quoting *Faragher*, 524 U.S. at 786).

Ferguson's complaint alleges that she was called "stupid" and "repeatedly demeaned," she was "harassed by security" and "told she could not carry a purse into secure areas," and her "immediate supervisor informed her that security and other management staff w[ere] harassing her because she [i]s 'Black.'" However, these claims are not in evidence. The only evidence before the court relating to Ferguson's claims of harassment is (1) Ferguson was asked not to bring a purse into the secure office; (2) security moved the shelves so as to not obscure the view of security camera after the first incident involving lost funds; and (2) Ferguson's supervisor asked her to make coffee.[2] Dkt. 18, Exh. B. There is no evidence that these requests were racially or sexually motivated. The

---

[2] This evidence was provided by Hilton, not Ferguson.

shelves were moved and Ferguson was asked not to bring in a purse for security reasons.  Ferguson

was obviously responsible for a great deal of money, and it was reasonable for Hilton to take the

steps it felt necessary to ensure that its money was secure.  As far as making coffee, Ferguson

admitted that she was asked to make coffee because she makes better coffee than others in her

department, which is a legitimate reason for asking her to make coffee and is unrelated to her gender

or race.  Because there is no evidence that these actions were taken because of Ferguson's race or

gender, she has not met her *prima facie* burden.

Because Ferguson has not met her burden of demonstrating that there is an issue of material

fact with regard to her claims of sexual and racial harassment, these claims are DISMISSED WITH

PREJUDICE.

## C.    Defamation

Ferguson alleges that Hilton published a defamatory statement about her to the Harris County

District Attorney's Office, the unemployment office, and the EEOC.  Dkt. 1.  Specifically, she

claims that Hilton told the EEOC that she was formally terminated, told the District Attorney that

she left after taking the money and never came back, and told the unemployment office that she left

voluntarily.  *Id.*  Hilton claims that its statements to the EEOC and unemployment office were not

defamatory and that these statements, as well as any statements made to the District Attorney, were

protected by a qualified privilege that arose out of the occasion upon which the statement was

published.  Dkt. 18.

To show that a statement is defamatory, the plaintiff must present evidence that the defendant

"(1) published a statement; (2) that was defamatory concerning plaintiff; (3) while acting with either

actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was

a private individual, regarding the truth of the statement."  *WFAA-TV, Inc. v. McLemore*, 978

S.W.2d 568, 571 (Tex. 1998).  To prevail on summary judgment, the defendant must disprove at least one element of the plaintiff's defamation claim.  *Id.*  "Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law or the court."  *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).  "The court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement."  *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987).  "The threshold question then, which is a question of law, is whether [the defendant's] statements are reasonably capable of a defamatory meaning."  *Id.*

Any statements that Hilton made to the EEOC about Ferguson being fired were not capable of defamatory meaning because a statement that an employee was fired based on work performance is nonspecific and not reasonably capable of defamatory meaning.  *See Einhorn v. LaChance*, 823 S.W.2d 405, 411 (Tex. App.–Houston [1st Dist.] 1992, writ dism'd w.o.j.).  Similarly, the statement made to the unemployment office that Ferguson left voluntarily was not defamatory because a "true account is not actionable—regardless of the conclusions that people may draw—so long as it does not create a substantially false and defamatory impression by omitting material facts or suggestively juxtaposing them in a misleading way."  *Klentzman v. Brady*, 312 S.W.3d 886, 898-99 (Tex. App.–Houston [1st Dist.] 2009, no pet.).  Here, the evidence before the court demonstrates that Hilton received a resignation letter from Ferguson.  Thus, the alleged statement to the unemployment office was true and is therefore not defamatory.  Moreover, even if it were not true, there is nothing defamatory about stating that an employee resigned.  *See In re Jennings*, 203 S.W.3d 32, 36 (Tex. App.–San Antonio 2006, no pet.) ("If a communication does not either injure a person's reputation or impugn his character, the language is not defamatory and is not actionable.").

Regarding the alleged statement to the District Attorney relating to Ferguson's departure, Ferguson testified that she had no knowledge of what Hilton told the District Attorney and that her accusation that Hilton said that she took the money and left was based on phone calls to her from individuals at Hilton in which they stated that Hilton was going to have to "report this as a criminal act." Dkt. 18, Exh. B at 389-91. Thus, there is no evidence that anyone at Hilton actually told the District Attorney that Ferguson left after taking the money and never came back. Certainly, it can be inferred that the District Attorney determined that it had enough evidence to arrest Ferguson after talking with people at Hilton, but, given the other evidence, the District Attorney could have determined there was enough evidence to arrest Ferguson without any person actually saying that she "took the money."

Moreover, any statements made to the District Attorney, so long as not made with actual malice, were entitled to a qualified privilege. "[T]o be entitled to a qualified privilege, the defendant's statement must (1) be made without malice; (2) concern a subject matter that is of sufficient interest to the author, or be in reference to a duty the author owes; and (3) be communicated to another party having a corresponding interest or duty." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 99 (Tex. App.–San Antonio 2003, pet. denied). "The privilege applies as long as the communication passes *only* to persons having an interest or duty in the matter to which the communications relate." *Grant v. Stop-n-Go Market of Tex., Inc.*, 994 S.W.2d 867, 874 (Tex. App.—Hous. [1st Dist.] 1999, no pet.). "The privilege is abused if the statement is made with actual malice—that is, it is made with knowledge of its falsity or with reckless disregard as to its truth. . . . The privilege is also abused if the person claiming it does not act for the purpose of protecting the common interest." *Id.* (citations omitted). In order to invoke the privilege on

13

summary judgment, the defendant must "conclusively establish that the defamatory statement was made without malice." *Id.*

The evidence presented by Hilton demonstrates that Hilton's actions in reporting the loss to the District Attorney were not made with malice. Ferguson's resignation letter stated that she was "short the money" and that she knew she would have to pay the money back. *Id.* (citing Ferguson Dep, Ex. 21). While she implied that perhaps Dunbar or the bank had the missing money, Hilton contacted both Dunbar and the bank, and neither had the missing money. *Id.*, Exh. A. "It is customary for Hilton to alert the police and fill out a crime loss report when any loss occurs," which is what it did after it determined that the money was missing. *Id.* Given these facts, it was reasonable to report the missing money and the events relating to the missing money to the authorities.[3] After reporting the loss to the police, Hilton "simply cooperated with the police." *Id.* Ferguson has not presented any evidence that Hilton told the police that Ferguson took the money, and even if Hilton did tell the police and/or District Attorney that Ferguson took the money, such a statement cannot be said to be made with malice as the evidence reasonably points to this conclusion. Thus, any alleged statements to the District Attorney about Ferguson taking the money were not made with actual malice and are therefore entitled to a qualified privilege. Accordingly,

---

[3] Even absent Ferguson's resignation letter, the steps that Hilton took to ensure that its money was secure lead to a reasonable inference on Hilton's part that Ferguson was at fault. Ferguson's office was isolated, with no windows leading outdoors, and the door remained locked at all times. The only persons who had a key were the General Cashier and the Assistant Director of Finance. Dkt. 18 (citing Ferguson Dep. and Tubb. Aff.). The office had an alarm that went off if the door was open for approximately 30 seconds, and there was a surveillance camera inside the office that monitored all activity. *Id.* (citing Ferguson Dep. & Tubb Aff.). The money was kept in vaults inside this office. *Id.* (citing Ferguson Dep. & Tubb Aff.). Ferguson had to use a key and a number combination to open the vault where the currency was kept. *Id.* (citing Ferguson Dep.). Only the General Cashier and the Director of Finance had access to the combination. *Id.* (citing Ferguson Dep. and Tubb Aff.). Ferguson kept the vault key in a drawer in her office that she locked every night before she left. *Id.* (citing Ferguson Dep. & Tubb Aff.).

Ferguson's defamation claim relating to alleged statements to the District Attorney fails as a matter of law.

Since Ferguson's alleged statements to the unemployment office, the EEOC, and the District Attorney were either not defamatory or privileged, Ferguson's defamation claim is DISMISSED WITH PREJUDICE.

## D.     Intentional Infliction of Emotional Distress

Ferguson also asserts a claim for intentional infliction of emotional distress, stating that Hilton "intentionally or recklessly pressured [her] using race as a catalysts [sic.] of discrimination." Dkt. 1.  To make out a claim for intentional infliction of emotional distress under Texas law, a plaintiff must show "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). Hilton claims that none of the facts alleged are "extreme and outrageous."  Dkt. 18.  Ferguson, in failing to respond to the motion and present evidence, has presented no evidence demonstrating that there is an issue of material fact with regard to this claim.  Accordingly Ferguson's intentional infliction of emotional distress claim is DISMISSED WITH PREJUDICE.

## E.     Retaliation

Ferguson's final claim is that Hilton retaliated against her because she allegedly filed a formal complaint with her supervisor relating to the way she was being treated by security and other management personnel.  Dkt. 1.  To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a casual link existed between the protected activity and the adverse employment action.  *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 1997).  Hilton claims that Ferguson

cannot establish that she engaged in protected activity or that she suffered an adverse employment action as a result.  Ferguson has come forward with no material facts to support her *prima facie* burden.  Accordingly, Ferguson's claim for retaliation is DISMISSED WITH PREJUDICE.

## IV. Conclusion

All of Ferguson's claims against Hilton are hereby **DISMISSED WITH PREJUDICE**. This is a **FINAL JUDGMENT**.

It is so ORDERED.

Signed at Houston, Texas on April 19, 2011.

_____
Gray H. Miller
United States District Judge